# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JOHN VALENTE,

      Plaintiff,     :     Case No. 3:07-cv-473

  -vs-                               Chief Magistrate Judge Michael R. Merz

                              :

UNIVERSITY OF DAYTON
 SCHOOL OF LAW, et al.,

      Defendants.

---

### DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

---

       This case came on for hearing on Plaintiff's Motion for Preliminary Injunction (Doc. No. 18) on February 4-5, 2008. For the reasons set forth below, Plaintiff's motion is denied. The Court's findings of fact and conclusions of law, as required by Fed. R. Civ. P. 52, are embodied in the following opinion.

### Procedural History

       Plaintiff John Valente, a juris doctor candidate at the University of Dayton School of Law ("UDSL"), filed this action *pro se* against UDSL[1] and Professor Harry Gerla, who held the position of Associate Dean for Academic Affairs at UDSL during the 2006-2007 academic year. Initially,

---

[1] UDSL is not *sui juris*. The University of Dayton, which is UDSL's parent institution, is *sui juris* and is hereby substituted for UDSL as a formal defendant in this action. Absent any evidence to the contrary, the Court assumes all actions taken by UDSL are within the authority of persons acting on behalf of UDSL insofar as the University is concerned.

1

Mr. Valente challenged only the administration of test taking software during the Spring, 2007, examination period (Complaint, Doc. No. 4).

On January 18, 2008, however, Mr. Valente filed a Motion for Temporary Restraining Order (Doc. No. 8) seeking to restrain the UDSL Honor Council from proceeding with an investigation and hearing regarding alleged violations of the Honor Code by Mr. Valente. That Motion came on for hearing the same day. The parties unanimously consented to plenary magistrate judge jurisdiction under 28 U.S.C. § 636(c),[2] the case was referred on that basis, the Court denied the restraining order and set the preliminary injunction hearing for February 4. The parties engaged in hotly contested expedited discovery (See Doc. Nos. 23, 27, 30, 31, 32, 34, 35) and UDSL postponed, after negotiation, the Honor Council hearing until after the preliminary injunction hearing. Although the proceedings are being transcribed, the transcript is not available as of the writing of this opinion.

**Analysis**

UDSL operates under an Honor Code.[3] Every law student in Mr. Valente's class was required to read and subscribe to the Code not later than the date classes commenced in August, 2006. The terms of the Code were not separately negotiated with each student and presumably would not have been had a request been made. Indeed, the Honor Code was drafted by law students

---

[2]Several judicial officers of this Court disqualified themselves from the litigation based on present affiliations with UDSL. The parties were reminded that Magistrate Judge Merz had taught at UDSL in the past, but they waived any potential disqualification and consented to § 636(c) jurisdiction.

[3]The parties tendered identical exhibits (Plaintiff's Ex. HC; Defendants' Ex. 2) which purport to be Appendices B-1, the Honor Code adopted March 25, 2002, and B-2, Policy on Academic Dishonesty, approved by the "faculty" in March, 1978, and by the President of the University in May, 1978. The Court is not advised what these documents are appended to. Because the Policy on Academic Dishonesty specifies a different procedure for enforcement and was adopted at a different time, the Court assumes only the Honor Code is at issue here.

and adopted by them in 2002.

Plaintiff alleges in his Amended Complaint that the "Honor Code procedures . . . is [sic] a contract between the school and the plaintiff." (Doc. No. 26 at ¶ 57.) Sometime in January, 2008, the Honor Council began investigating an allegation that Plaintiff violated the Honor Code during the Fall, 2007, examination period.

In Count Seven, Plaintiff claims that UDSL breached the Honor Code contract by failing to appoint his nominee to the team investigating this allegation. *Id.* at 59. He seeks a court order appointing his selected investigator, Aleana Smith, or an alternative neutral investigator. *Id.* at ¶ 101.

In Counts Eight, Nine, and Ten, Plaintiff alleges the Honor Code is an unconscionable contract, void for vagueness, and/or void as a contract of adherence. *Id.* at ¶¶ 103, 106, and 109. In support of those claims, he asserts the Honor Code procedure:

(1) permits hearsay evidence; *Id.* at ¶ 60.

(2) allows no voir dire of the hearing panel members; *Id.* at ¶ 61.

(3) fails to require the prosecutor to disclose exculpatory evidence; *Id.* at ¶ 62.

(4) allows only the prosecutor to see the results of the investigation; *Id.* at ¶ 63.

(5) fails to give the accused adequate notice of the charges or the identity of the accuser before he or she is interrogated by the investigative team; *Id.* at ¶¶ 64, 65.

(6) may punish the accused for failing to "comply" with the investigating team without defining that obligation; *Id.* at ¶¶ 66, 67.

(7) fails to define the authority, limitations, and proper procedures for the investigating team; *Id.* at ¶ 68.

(8) does not bind the Honor Council by its own precedent; *Id.* at ¶ 69.

(9) does not allow the accused an opportunity to present character evidence (added orally at the

preliminary injunction hearing).

(10)   allows a finding of guilt by a vote of five out of seven (added orally at the preliminary injunction hearing).

(11)   allows or may allow insufficient time to prepare for the hearing and to designate witnesses (added orally at the preliminary injunction hearing).

(12)   does not permit the accused to interview the prosecution's witnesses (added orally at the preliminary injunction hearing).

(13)   does not adequately specify procedures, leaving excessive unguided discretion to the President of the Honor Council (added orally at the preliminary injunction hearing).

As a remedy for these inadequacies, Plaintiff asks the Court to enjoin the Honor Council proceedings against him "until such time as the procedures in issue are deemed fair and equitable by the court" or until a hearing on the charges against him is conducted by a mediator under rules agreed to by both parties. (Amended Complaint, Doc. No. 26, at ¶¶ 104, 107, and 110.) In essence, Plaintiff seeks equitable reformation of his contract for a law school education at UDSL.

Testimony regarding operation of the Honor Council was given by its President, Kathryn Bowling, and by Assistant Dean for Student Affairs Lori Shaw. Their testimony establishes that Mr. Valente's contentions about how the Honor Code operates are true except that the accused may interview his own witnesses in preparation for the hearing and is given a discovery packet with summaries of information uncovered by the investigating team. Of course, they did not concur in his characterizations of the procedures as unfair or lacking in due process.

The factors to be considered in determining whether to issue a preliminary injunction are

> 1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
> 2) Whether the plaintiffs have shown irreparable injury;
> 3) Whether the issuance of a preliminary injunction would cause substantial harm to others;
> 4) Whether the public interest would be served by issuing a

4

preliminary injunction.

*Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 888 (6th Cir. 2000); *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994); *NAACP v. City of Mansfield*, 866 F.2d 162, 166 (6th Cir. 1989); *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *In re DeLorean Motor Co*., 755 F.2d 1223, 1228 (6th Cir. 1985). These four considerations are "factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *DeLorean*, 755 F.2d at 1229. Although no one factor is controlling, a finding that there is no likelihood of success is usually fatal. *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

## Likelihood of Success on the Merits

It is ironic that the Honor Code violations asserted against Plaintiff are for cheating on an advanced criminal law examination, for the deficiencies he finds in the Honor Code procedures parallel the requirements of criminal due process.

Thus in a criminal proceeding one is entitled as a matter of due process of law to notice of the charges against one, *Combs v. Tennessee*, 530 F.2d 695 (6th Cir. 1976); to confront one's accusers, which usually requires the exclusion of hearsay, *Crawford v. Washington*, 541 U.S. 36 (2004); to an impartial jury with the right of voir dire to ensure impartiality; to disclosure of exculpatory evidence known to the State, *Brady v. Maryland*, 373 U.S. 83 (1963); and to a unanimous jury which finds guilt beyond a reasonable doubt. While not mandated by the Due Process Clauses, a criminal defendant is entitled by rule and tradition to introduce evidence of his own good character. See Fed. R. Evid. 404(a)(1). The extent to which *stare decisis* is

constitutionally required is not established,[4] but is certainly traditional in both criminal and civil litigation, at least in this country.

However, the Honor Council proceeding is not criminal in nature, since the penalties it may recommend are not criminal penalties, which are limited to imprisonment and fine. Moreover, the University of Dayton is not legally bound by the Due Process Clause because, at least for these purposes, it is not a state actor within the meaning of the Fourteenth Amendment. *See Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961); *Hamilton v. Regents*, 293 U.S. 245 (1934); *Compare United States v. Price*, 383 U.S. 787, 794 (1966); *Blum v. Yaretsky*, 457 U.S. 991 (1982), *quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974); *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982). But the "[Fourteenth] Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721(1961), *quoting Shelly v. Kraemer*, 334 U.S. 1, 13 (1948).

How the civil law should deal with the internal governance of "private" institutions is a much mooted question. Because there is not a cleanly applicable civil law set of rules, the analysis is usually shoe-horned into some "other conceptual shelter," usually contract. See Fuller, THE MORALITY OF LAW, at 127-29 (1964 ed.); Note, "Private Government on the Campus – Judicial Review of University Expulsions," 72 Yale L. J. 1362 (1963). Fuller suggests conflicts such as this one might be seen more appropriately as a matter of non-state constitutional law. Fuller at 128. However, the civil law has not developed in that direction and the parties here have argued the case in terms of contract.

Subject matter jurisdiction in this case is grounded in the diverse citizenship of the parties.

---

[4]*See Anastasoff v. United States*, 223 F. 3d 898 (8th Cir. 2000)(Arnold, J.)(holding that a rule which did not allow courts to rely on unpublished opinions as precedent was unconstitutional), vacated on grant of rehearing *en banc*, 2000 U.S. App. LEXIS 33247 (8th Cir. 2000).

6

It is therefore Ohio contract law which this Court must apply. 28 U.S.C. §1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

"To be unconscionable, a contract must be one 'which no man in his senses, not under delusion, would make on the one hand, and which no fair and honest man could accept on the other.'" Quoting *Neal v. Lacob*, 31 Ill. App. 3rd 137, 334 N.E.2d 435, 439 (Ct. App. 1975) quoting *Hume v. United States*, 132 U.S. 406, 410, 10 S. Ct. 134, 33 L. Ed. 2d 393 (1889). *Highway Equipment Co. v. Caterpillar, Inc.,* 908 F.2d 60 (6th Cir. 1990)(Boggs, J.).

> Unconscionability is a question of law, and "is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Collins [v. Click Camera & Video, Inc.]*, 86 Ohio App.3d at 834; *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.,* 67 Ohio St.2d 91, 98, 423 N.E.2d 151 (1981). Thus, Ohio's unconscionability doctrine consists of two prongs: (1) procedural unconscionability, and (2) substantive unconscionability. *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (Ohio Ct. App. 1996). A contract is unconscionable only if it meets both tests. *Collins*, 86 Ohio App.3d at 834.

*Doe v. SexSearch,* 502 F. Supp. 2d 719, 734 (N. D. Ohio 2007)(Zouhary, J., applying Ohio law). Procedural unconscionability involves factors relating to the "relative bargaining position of the contracting parties, e.g., 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question.'" *Id*. at 734-35, citing *Collins* at 834 (quoting *Johnson v. Mobil Oil Corp*., 415 F. Supp. 264, 268 (E.D.Mich. 1976)). While the Honor Code here was essentially imposed on Plaintiff by UDSL, it was drafted by law students with only somewhat more legal sophistication than he and he was repeatedly made aware of its terms; indeed, he took an oath to abide by them, unlike perhaps some other terms of his "contract" for legal education.

7

The fact that a contract is essentially one of adhesion, as the Honor Code is admitted to be, does not alone make it unconscionable. *Collins*, 86 Ohio App. 3d, at 835. If a federal judge may properly take judicial notice of "the existence of numerous other adult-dating websites" as Judge Zouhary did in *Doe*, 502 F. Supp. 2d at 735, n.2, certainly this Court can take judicial notice of the existence of many other law schools which Plaintiff might have attended, although whether they have similar honor codes is unknown. Thus Plaintiff has failed to established procedural unconscionability.

Plaintiff's case for substantive unconscionability is even less persuasive. He has certainly not shown that the procedures in the Honor Code are less protective of accused students than the procedures applied elsewhere to student discipline. See Van Alstyne, *Procedural Due Process and State University Students*, 10 U.C.L.A. L. Rev. 368 (1963), and *Anthony v. Syracuse Univ.*, 224 App. Div. 487, 489, 231 N.Y. Supp. 435 (1928)(expulsion for "not being a typical Syracuse girl" upheld). Criminal due process represents the strictest standard imposed on official conduct; when acting outside the criminal realm, even the government is not bound by such strict standards. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238 (1983); *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993); and generally *Mathews v. Eldridge,* 424 U.S. 319 (1976).

Considered in themselves and not in comparison with criminal due process, the Court does not find the Honor Code procedures to be unfair. They provide for a grand-jury-like investigation before any formal proceeding. They require notice and a hearing before a panel of students which is impartial. The Honor Code itself is written and students have fair notice of the kinds of conduct which will constitute violations. While the Honor Council does not have an established body of binding written precedent, the entire civil law system of Europe, not generally thought to be unfair, operates in that manner.

Nor has Plaintiff demonstrated that the Honor Code has been applied unfairly in his case.

While his nominee for the investigating team was not appointed, in apparent derogation of the literal language of the Code, President Bowling had a compelling reason not to appoint her and Plaintiff declined to appoint someone else. He also has not demonstrated that the investigation was conducted unfairly or that Ms. Smith would have uncovered any additional relevant facts. Despite an initial timing problem, he will have had virtually as much time as any accused to prepare his case. He has not contended, nor could he reasonably be heard to contend, that the conduct with which he is charged – cheating on an examination and suborning such cheating – is not behavior warranting serious academic sanctions if proved; based on the evidence presented at the hearing, there is certainly probable cause to believe he engaged in the conduct.

To summarize, Plaintiff is unlikely to prevail on Count 7 because Ms. Bowling's interpretation of the Honor Code was reasonable. A contract of adhesion is not void *per se* and is not *per se* unconscionable. Finally, the void for vagueness doctrine pled in Count Nine applies to statutes, not contracts. *Chicago v. Morales,* 527 U.S. 41 (1999).

## Irreparable Harm

Furthermore, Plaintiff has not demonstrated he will suffer irreparable harm by being compelled to participate in the Honor Council proceedings. For the reasons set forth above, the procedure provided for those proceedings is not unfair. Furthermore, a full record of the proceedings is to be created and will therefore be available for review. Finally, the Honor Council has the power to recommend, but not impose a sanction; imposition of a sanction is reserved to the Dean.

In determining lack of irreparable harm, the Court places no weight on the fact that Plaintiff has pled an amount of damages which would result from his expulsion.

**Harm to Others**

Issuance of a preliminary injunction to halt the Honor Council proceedings would impinge on the rights of other law students, which the Honor Code is intended to protect, to compete fairly for grades and academic recognition. Whether a competitive model of legal education is the most appropriate way to prepare lawyers is beside the point. The surest way to ensure cynicism in law students would be to undermine a fair, swift, method of dealing with alleged cheating. Enjoining Honor Code proceedings in this case could well lead to frequent resort to court in the face of Honor Code accusations, a result which would surely undermine student confidence in the Code. Because enjoining the Honor Code proceedings would inflict harm on other law students, the "balance of equities" weighs against the injunction.

**The Public Interest**

For good or ill, adversarial legalism is, according to Robert Kagan's book of that title, "The American Way of Law." That system is heavily dependent on a bar which maintains the highest standards of ethical practice. The bar is in turn heavily dependent on self-policing to maintain its ethics.

The UDSL Honor Code, both in its formulation and its apparent application in this case, is an important object lesson to law student participants in the discipline of self-policing. Not only is academic dishonesty prohibited, but law students are compelled to report violations by others, just as lawyers are obliged to report violations of the Code of Professional Conduct. Important as mock trial or mock appeal exercises have always been to legal education, these honor proceedings may be more important, for there is nothing mock about them: they have potentially catastrophic

consequences for the accused and may therefore be expected to impress their seriousness on other participants, whether advocates, witnesses, or judges.  In the Court's opinion, it is never too early to impress upon law students that it is very serious business which we are about in the law.  To enjoin these proceedings would be to interfere seriously with law student self-governance in a way detrimental to eventual protection of the public from lawyer misconduct.

## Conclusion

Plaintiff's Motion for Preliminary Injunction fails all four prongs of the test for such relief under Sixth Circuit law and is therefore DENIED.

February 6, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge
